Jean T. KALDOR, as Personal Representative of the Estate of Chauncey T. Kaldor, and John G. Shaft, Plaintiffs and Appellees,

v.

Bernard E. BJERKE, a/k/a Bernard Bjerke, Defendant,

and

Ida Bjerke, a/k/a Ida Josephine Engen Bjerke, Defendant and Appellant.

Civ. No. 9773.

Supreme Court of North Dakota.

Oct. 27, 1980.

Rehearing Denied Nov. 21, 1980.

Gary R. Thune, of Shaft, McConn, Fisher & Thune, Grand Forks, for plaintiffs and appellees.

Ida Bjerke, Grand Forks, defendant and appellant, pro se.

VANDE WALLE, Justice.

Ida Bjerke appeals from a judgment entered in district court, Grand Forks County, on February 27, 1980. This judgment was entered after Mrs. Bjerke failed to show cause why she had not executed the necessary documents for confession of judgment and refused to sign a confession of judgment. We affirm.

This appeal represents the culmination of a legal history which dates back almost 25 years. Although it is not necessary to go into fine detail regarding the earlier years of this history, some background on the facts giving rise to this case is important. Beginning in approximately 1956, Chauncey Kaldor, an attorney (now deceased whose widow, as personal representative of his estate, is appellee in the present case), began representation of Bernard Bjerke, husband of the appellant, Ida Bjerke. The legal matters which necessitated this representation centered primarily on various guardianship and estate matters regarding Bernard's father. A dispute over the ownership of a tract of farmland became the focal point of the legal work by Kaldor, and subsequently Attorney John Shaft, the other appellee in this case, who spent considerable time on the resolution of this dispute in favor of Bernard Bjerke. Over a period of approximately eight years, one or the other of the two attorneys, acting on behalf of Bernard Bjerke, made numerous appearances in county court, appeared at approximately a dozen hearings in district court, and appeared three times before this court. See *In re Bjerke's Estate*, 137 N.W.2d 225

(N.D.1965); *In re Estate of Bjerke*, 148 N.W.2d 575 (N.D.1967); and *In re Estate of Bjerke*, 181 N.W.2d 126 (N.D.1970). Ultimately the efforts of the attorneys were successful and a final decree of distribution was entered and title to the farmland became vested in Bernard Bjerke.

At this point it should be mentioned that during the time of the three appeals to this court, Shaft met more than 100 times with Ida Bjerke. At no time did Bernard Bjerke go to Shaft's office and the only time Shaft spoke with Mr. Bjerke was briefly at some of the hearings. It appears that at all times it was believed by the attorneys that Mr. Bjerke was the client but was too ill, too nervous, or otherwise unable to confer with Shaft. At no time during the entire course of the litigation was reference ever made to the fact that Ida Bjerke might be an interested party with regard to title to the farmland.

Upon completion of the legal work done on Mr. Bjerke's behalf, the attorneys sent Mr. Bjerke a statement for their services. Bjerke refused to pay the bill and the attorneys commenced litigation to obtain a judgment for their fees and disbursements. On January 22, 1974, by memorandum decision, Judge Harold M. Hager found that Kaldor had spent approximately 1,000 hours working for Mr. Bjerke and that Shaft had spent approximately 700 hours. Judge Hager also found that Kaldor had incurred costs of $125 and Shaft had incurred costs of $473.02. Finally, Judge Hager found that Kaldor had undertaken the legal work on a one–third contingent–fee basis and that the value of the farmland recovered for Mr. Bjerke was $54,067 along with income recovered in the amount of $23,000, for a total value of recovery of $77,067. Of this amount, Kaldor and Shaft were awarded a total of $26,287.42 by the court. On December 21, 1973, approximately three weeks after the commencement of the trial in the action for attorney fees and approximately one month before the judgment in favor of the attorneys, a warranty deed, dated September 4, 1951, conveying the much–litigated farmland from Bernard to Ida Bjerke, was acknowledged by a notary public. One week later that warranty deed was recorded. Following the entry of the judgment in favor of the attorneys, the Bjerkes claimed that this deed had been long been in existence and that Ida Bjerke was the true owner of the property. This effectively prohibited any execution upon the farmland in order to satisfy the judgment against Bernard Bjerke.

On January 31, 1974, an action was commenced against Ida and Bernard Bjerke. The purpose of this action was to have the transfer set aside as a fraudulent conveyance. By amended complaint dated June 24, 1976, the attorneys alleged an alternative action in quasi–contract, claiming unjust enrichment, and asking for a judgment against Ida Bjerke in the amount of $26,-287.42. The amount sought in this action was presumably to stand in place of the judgment already obtained against Bernard Bjerke.

A trial by jury on the matter was set for October 23, 1979, in district court in Grand Forks County. On that date, with the jury panel assembled in the adjacent courtroom, Ida Bjerke with her counsel, Richard Ohlsen, and John Shaft with his counsel, Gary Thune, who also served as attorney for the estate of Chauncey Kaldor, met in chambers with Judge James H. O'Keefe and his court reporter. The purpose of this meeting was to discuss the terms of a compromise settlement in the action. After all parties had acknowledged and consented to the settlement, on the record, the jury panel was informed of the settlement and dismissed.

By February 1980, Ida Bjerke had made no effort to fulfill her obligations with regard to the settlement agreement. On February 15, 1980, a show–cause hearing was held at which Ida Bjerke failed to demonstrate why she had not executed the necessary documents for completion of the matter. Thereafter, on February 27, 1980, a judgment was entered against her. It is from this judgment she appeals.

Ida Bjerke, appearing pro se in this appeal, raises many concerns relative to the

events which took place over the entire 25–year history of this matter. Because of Bernard Bjerke's continuing illness, Ida Bjerke was involved from the start with the disputes over ownership of the farmland. Indeed, she may have been the main combatant in the battle with her husband's brothers and sisters over this land. At oral argument she asserted that she had only an eighth–grade education, yet she was in constant interaction with the attorneys throughout each phase of this oftentimes complicated litigation.

While over the years Ida Bjerke may have been occasionally dissatisfied with how the legal matters were proceeding, and while it is clear from the brief she submitted to this court and from her oral presentation that she has not always fully comprehended all aspects of the legal matters in which she was involved, she appeals here only from the judgment entered against her on February 27, 1980.

The judgment against Ida Bjerke was entered after she failed to fulfill her obligations under the settlement agreement she had entered into with the plaintiff attorneys prior to a scheduled trial. This court's position regarding the validity of such settlements has been clearly stated:

"Where a controversy between parties is settled before trial, and where the settlement is fairly made, the stipulation takes on the character of a contract between the parties and is final and conclusive, and based on good consideration. Such settlement cannot be set aside in the absence of a showing of fraud, duress, undue influence, or such other facts as would warrant the setting aside of any contract." *Bohlman v. Big River Oil Company*, 124 N.W.2d 835, 837 (N.D. 1963).

In applying the standard set forth in *Bohlman, supra*, to the present case, it is necessary for us to examine just what took place in Judge O'Keefe's chambers on the day of the settlement. However, before doing so we outline the terms of that settlement. The settlement was arranged with an eye toward satisfying the original judg-ment of $26,287.42 obtained by the attorneys against Bernard Bjerke. The settlement itself was for considerably less than the original judgment. Under the terms of the settlement Ida Bjerke agreed to pay $15,000 in full settlement of the claims of Mr. Shaft and the estate of Mr. Kaldor. The amount was to be payable six months from the date of the agreement subject to six percent interest. No interest was to be charged if payments were made in full by January 1, 1980. The purpose of the six–month waiting period was to allow time for Ida Bjerke to make arrangements for the necessary funds. Further, Ida Bjerke agreed to confess judgment in this matter so that no further litigation would be necessary.

On October 25, 1979, Judge O'Keefe issued an order of dismissal with prejudice of the action brought by the attorneys against Bernard and Ida Bjerke. In his order, Judge O'Keefe stated that the "dismissal is premised on a Confession of Judgment by the Defendant, Ida Bjerke." He further stated: "Defendant, Bernard E. Bjerke, not being present at the time of the agreement, but having been advised of such hearing and his rights in this matter, this Dismissal with Prejudice has no effect at this time on the previous Judgment by these Plaintiffs against Bernard E. Bjerke. This settlement is made with a view towards satisfying that previous Judgment." That order by Judge O'Keefe was filed on October 26, 1979.

In her brief and at oral argument Ida Bjerke frequently, and without elaboration, used the terms "fraud" and "duress" in describing the conditions surrounding her participation in the settlement agreement under dispute here. However, a full reading of the transcript of the events in Judge O'Keefe's chambers on the day the settlement agreement was reached reveals not a trace of duress, fraud, or any other facts which would warrant the setting aside of any contract. In addition to the aforementioned allegations, Mrs. Bjerke contends that the attorney, Richard Ohlsen, who was present with her and participated actively in the settlement agreement, was not, in

fact, representing her. Again, the record as a whole, and in particular the dialogue between Mr. Ohlsen and Mrs. Bjerke during the conference in Judge O'Keefe's chambers, clearly refutes this contention.

Turning to the transcript of the conference with Judge O'Keefe in which the settlement agreement was formalized, we quickly discover that Mrs. Bjerke was well aware of what was taking place and willingly assented to the nature and terms of the settlement:

"THE COURT: ...

"... He [Mr. Ohlsen] is going to say what he believes the settlement to be, and then I am going to ask if that is your understanding of it. Do you know what I mean?

"IDA BJERKE: Yes."

Mr. Ohlsen then described the settlement agreement as it was detailed here earlier.

"THE COURT: ...

"Do you understand what your attorney has said?

"IDA BJERKE: Yes.

"THE COURT: She has to have a yes or no.

"IDA BJERKE: Yes, yes.

"THE COURT: Do you agree to this?

"IDA BJERKE: I feel it is—the proper thing to do.

"THE COURT: All right. And then you do agree to it?

"IDA BJERKE: Yes, definitely."

Regarding Ida Bjerke's understanding of the terms of the agreement as well as her allegation that Mr. Ohlsen was not representing her in this matter, the following dialogue is revealing:

"MR. OHLSEN: Mrs. Bjerke, when we were talking before we were talking in terms of nine percent and they have agreed to a lesser sum of six percent, but from that date. Is that agreeable to you?

"IDA BJERKE: That would be all right that way. It is less interest."

This exchange, along with the fact that Mr. Ohlsen had filed an answer to the complaint for Mrs. Bjerke, makes it clear that Mr. Ohlsen and Mrs. Bjerke were operating in an attorney–client capacity and had discussed the terms of the settlement agreement prior to the conference in that capacity. The exchange also reveals that Mrs. Bjerke understood the details of the settlement.

Subsequent to the conference in which Ida Bjerke agreed to the terms which would settle this matter, she refused to sign the instruments necessary to implement the agreement. Appearing at a show–cause hearing held on February 15, 1980, to determine whether or not she had justification for not executing the papers necessary for a confession of judgment, Mrs. Bjerke apparently informed the court that she would not sign any judgment papers. The record contains no transcript of that show–cause hearing, so we are left to speculate as to why Mrs. Bjerke took this position. However, this speculation is not difficult when done in light of both Mrs. Bjerke's brief and the transcript of the settlement–agreement conference. While the transcript of the settlement–agreement conference clearly reflects that all parties, including Mrs. Bjerke, understood the nature and terms of the settlement, neither the transcript nor her brief indicate that the mechanics regarding implementation of the settlement agreement were discussed with or understood by Mrs. Bjerke. She apparently did not understand it would be necessary for her to perform certain ministerial tasks such as signing documents in order to complete the settlement. It is unfortunate that Mrs. Bjerke misunderstood these details. However, that misunderstanding in no way will suffice to excuse her from the obligation she agreed to assume through the settlement agreement reached on the record.

The judgment of the district court is affirmed.

ERICKSTAD, C. J., and PEDERSON, PAULSON and SAND, JJ., concur.